IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **ARMANDO BLANDON RAUDEZ,** §<br>    Petitioner, §<br> §<br>v. §<br> §<br>**PAM BONDI,** *Attorney General of the* §<br>*United States, et al.,* §<br>    Respondents. § | EP-25-CV-00493-DB |

## ORDER

On this day, the Court considered the above-captioned case. It is a "basic proposition that all orders and judgments of courts must be complied with." *Maness v. Meyers*, 419 U.S. 449, 458 (1975).  Yet, in a seemingly rare occurrence, Respondents in this case failed to do just that by deporting Petitioner Armando Blandon Raudez after the Court unequivocally ordered the parties not to do so, and before he could be heard in this Court of law.

On October 15, 2025, Petitioner filed his "Petitioner for Writ of Habeas Corpus," ECF No. 1, in the Northern District of Illinois, asking the Court to "[d]eclare that the Petitioner's detention and scheduled deportation violates the Due Process Clause of the Fifth Amendment, 8 U.S.C. § §1231(b)(2), and "[i]ssue a Writ of Habeas Corpus ordering Respondents to pause the schedule[d] deportation of Mr. Blandon and release Petitioner immediately." ECF No. 1 at 7–8. The Northern District of Illinois determined it could not address the merits of the Petition because it was not the proper judicial district. So, on October 24, 2025, at 12:30 p.m. MDT, the case was transferred to the Western District of Texas – El Paso Division and assigned to this Court given that Petitioner was being detained at the Camp Montana East Detention Facility in El Paso, Texas.

On October 28, 2025, at 2:22 p.m. MDT, this Court issued its order to show cause, ECF No. 9, wherein this Court expressly ordered that "Respondents **SHALL NOT** (1) remove or deport Armando Blandon Raudez from the United States, or (2) transfer Armando Blandon Raudez to any facility outside the boundaries of the El Paso Division of the Western District of Texas, until the Court orders otherwise or this case is closed." ECF No. 9 at 2. This Court reasoned this order was necessary "in the interest of preserving the status quo and the Court's ability to fully assess this case on the merits." *Id.* The Court also proceeded to order a briefing schedule and set the matter for a hearing next week. *Id.*

Yet, on October 29, 2025, Respondents filed an "Advisory to the Court," ECF No. 10, advising the Court that Petitioner had been removed from the United States earlier that day, in violation of this Court's order. ECF No. 10 at 1. Respondents advised that "[o]n October 29, 2025, at approximately 8 am MT, undersigned sent notice of the Court's order to ICE agency counsel and learned, in response, Petitioner was removed from the United States. ICE provided the following: on October 28, 2025, ICE transferred Petitioner from Camp East Montana to the Florence Staging Facility in Arizona at approximately 3 am MT. On October 29, 2025, he was booked out of the Florence Staging Facility at approximately 4 am MT and subsequently removed to Mexico." *Id.*

Petitioner's removal plainly violated this Court's order, deprived the Court of equitable jurisdiction, and potentially deprived Petitioner of his rights in this case. Petitioner's challenge to the lawfulness of the length of time that he has been held in the physical custody of ICE, and his request to pause his deportation are moot. Since Petitioner has already been deported, it is

impossible to grant his request for supervised release or release on bond until he can be deported, or to pause a deportation that has already been effectuated.

On this record, this Court is not prepared to take punitive action for the disregard of its orders. Respondents and their entities should reevaluate their communication procedures to remediate seemingly inconsequential lapses that lead to irreparable consequences for parties and violations of Court orders. Respondents are forewarned that any similar action before this Court, especially in habeas petitions brought by alien detainees, may lead to sanctions or criminal contempt.[1] "The Constitution does not tolerate willful disobedience of judicial orders — especially by officials of a coordinate branch who have sworn an oath to uphold it." *J.G.G. v. Trump*, 778 F. Supp.3d 24, 31 (D.D.C. April 16, 2025). "To permit such officials to freely 'annul the judgments of the courts of the United States' would not just 'destroy the rights acquired under those judgments'; it would make 'a solemn mockery' of 'the constitution itself.'" *Id.* (citing *United States v. Peters*, 9 U.S. (5 Cranch) 115, 136, 3 L.Ed. 53 (1809) (Marshall, C.J.)). "So fatal a result must be deprecated by all." *Id.*

With disdain, **IT IS HEREBY ORDERED** this case is **DISMISSED AS MOOT.** The District Clerk shall close this case.

**SIGNED** this **30th** day of **October 2025**.

_____
**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[1] Title 18 of the United States Code Section 401 provides that any "court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, ... [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."